**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

GILBERT DAVIS,

    Plaintiff,

v.                                  CASE NO. 08-CV-10969

COMMISSIONER OF              DISTRICT JUDGE MARIANNE O. BATTANI
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

### **I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is no longer disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### **II.    REPORT**

#### **A.    Introduction and Procedural History**

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E. D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation is issued only to address the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. Local Rule 72.1(b)(3), this case was referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkts. 9, 10.)

In August 1993, Plaintiff was found to be disabled as of May 21, 1991. (Transcript at 13.) On August 25, 2003, a Notice of Disability Cessation was forwarded to Plaintiff, stating that the Commissioner had concluded that Plaintiff's medical condition had improved and that, as of August 1, 2003, he was no longer considered disabled. (Tr. at 24-28.) Plaintiff requested reconsideration. (Tr. at 29-41.) Plaintiff met with a Disability Hearing Officer in February 2004. (Tr. at 59-70.) On March 2, 2004, the hearing officer issued a decision, again finding that Plaintiff's disability had ceased as of August 1, 2003. (Tr. at 72-78.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On July 26, 2006, Plaintiff appeared before ALJ Richard Cecina. (Tr. at 446-86.) In a decision issued August 4, 2006, the ALJ also found that Plaintiff's disability had ceased as of August 1, 2003. (Tr. at 13-22.) Plaintiff sought review of this unfavorable decision. (Tr. at 9.) The ALJ's decision became the final decision of the Commissioner on January 9, 2008, when the Appeals Council, after the review of additional exhibits,[2] denied Plaintiff's request for review. (Tr. at 4-8.) On March 6, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.     Standard of Review**

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case *de novo*[.]" *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write

to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

### C. Governing Law

#### 1. Social Security Act

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

As mentioned, the standard for judicial review is whether there is substantial evidence to support the Commissioner's decision that the plaintiff's condition has improved to the extent that

he or she can perform substantial gainful activity. *Casiano, Jr. v. Heckler*, 746 F.2d 1144 (6th Cir. 1984). The Court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions. *Id.* at 1148.

2.       **Termination of Benefits**

An individual's entitlement to benefits under the Social Security Act is reviewed periodically for continued entitlement to benefits. 20 C.F.R. §416.994(a). When reviewed, the central question is whether the claimant's medical impairments have improved to the point where the claimant is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1). Improvement is measured from "the most recent favorable decision" that the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(i). There is no presumption of continuing disability. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87, n.1 (6th Cir. 1994). Instead, the Commissioner applies the procedures that are outlined in 20 C.F.R. §§ 404.1594 and 416.994 to determine whether a claimant's disability has ended such that he is now able to work.

The first part of the evaluation process focuses on medical improvement. The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). In the instant case, the most recent favorable decision finding Plaintiff disabled was dated August 18, 1993. (Tr. at 14.) A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* A medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision

and an increase in [the] functional capacity to do basic work activities . . . ." 20 C.F.R. § 404.1594(b)(3). *See also Kennedy v. Astrue,* 247 Fed. App'x 761, 765 (6th Cir. 2007).

The second part of the evaluation process relates to ability to engage in substantial gainful activity. The implementing regulations incorporate many of the standards set forth in regulations governing initial disability determinations. *See* 20 C.F.R. §§ 404.1594(b)(5), 404.1594(f)(7). The difference, however, is that the ultimate burden of proof lies with the Commissioner in termination proceedings. *Id.*; *Kennedy, supra*; *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

### D. Administrative Record

At the time of the most recent favorable decision finding Plaintiff disabled – August 18, 1993 – Plaintiff's impairments were Bell's palsy, hypertension, lumbar strain/back pain, a ganglion cyst of the right wrist, stomach ulcers, and costochondritis. (Tr. at 14.)

Evidence contained in the administrative record and presented to the ALJ indicates that in September 2000, a CT scan revealed a tumor in Plaintiff's right kidney that was determined to be cancerous. (Tr. at 97-98.) Plaintiff underwent removal of the right kidney, i.e., a total nephrectomy, in February 2001. (Tr. at 100.) Plaintiff was referred to David M. Cantor, M.D., for an "evaluation of his renal insufficiency." (Tr. at 124.) Dr. Cantor noted that, "other than [the] tumor, the rest of the [right] kidney was normal" and he "doubt[ed] significant renal dysfunction of the left kidney." (*Id.*)

In September 2002, Plaintiff was involved in a motor vehicle collision while riding his motorcycle and suffered multiple abrasions. (Tr. at 127.) Although Plaintiff continued to complain of left arm and leg pain, no fractures were found, so he was released from the hospital the next day. (Tr. at 127-93.) According to later medical records from Dr. Randy Feldman, D.P.M., Plaintiff also sprained his foot as a result of the motorcycle accident, resulting in bursitis

and tendonitis. (Tr. at 182-88.) Plaintiff also participated in some physical therapy at Dr. Feldman's urging. (Tr. at 183-84.)

In January 2004, Angela Bully, M.D., noted that Plaintiff had "good control of his bl[oo]d sugar" but was complaining of left hip and knee pain without prior injury such that an MRI would need to be performed to "fully eval[uate]" the condition. (Tr. at 217.) An MRI was taken in February 2004 which revealed a "[c]omplex tear of the posterior horn of the medial meniscus" and "[s]mall left knee joint effusion." However, the ligaments and tendons of the knee were found to be normal. (Tr. at 218.)

Plaintiff sought treatment at the emergency room of a hospital in May 2006 for bronchitis and was discharged in stable condition. (Tr. at 247-48.)

Plaintiff underwent an examination conducted by Dr. Anjum Sadiq, M.D., at the request of the Disability Determination Service on June 25, 2003. (Tr. at 194-98.) Dr. Sadiq found Plaintiff's symptoms to be related to a "[h]istory of arthritis in both hands, now presenting with intermittent pain in both hands," "[h]istory of motor vehicle collision with a motorcycle accident resulting in left lower extremity injury treated conservatively, now presenting with painful left foot," and a "[h]istory of diabetes mellitus." (Tr. at 196.) The doctor's physical examination revealed that straight leg-raising tests, neurological tests, Plaintiff's gait, muscle strength, reflexes sensory and coordination functions were all normal.[3] (Tr. at 196.) Range of motion charts attached to his report indicate that Plaintiff's lumbar spine, ankles, wrists, and hands all had normal range of motion. (Tr. at 197-98.)

A Physical Residual Functional Capacity (RFC) Assessment conducted in August 2003 concluded that Plaintiff was able to occasionally lift up to 50 pounds, frequently lift up to 25

---

[3]The doctor used the term "noncontributory."

7

pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and had an unlimited ability to push and/or pull. (Tr. at 200.) It was further concluded that Plaintiff is occasionally limited in all the potential areas, such as climbing, stooping, kneeling, and crawling. (Tr. at 201.) No manipulative, visual, communicative, or environmental limitations were noted. (Tr. at 202-03.) There were no treating or examining source statements regarding Plaintiff's physical capacities to compare to the findings in the assessment. (Tr. at 205.) In November of 2003, another physical RFC was performed, with the same conclusions except this assessment concluded Plaintiff was frequently limited in stooping, kneeling, crouching, and crawling. (Tr. at 209.)

### E. ALJ's Findings

In his Decision, the ALJ evaluated medical evidence presented as well as the testimony elicited during the administrative hearing, found that Plaintiff's medical condition had improved, and found that the improvement was related to his ability to work. The ALJ concluded that as of August 1, 2003, Plaintiff possessed the residual functional capacity to perform light work, with some limitations. (Tr. at 21-22.)

### F. Review of ALJ's Determination

#### 1. Legal Standards

In reaching his determination of nondisability, the ALJ concluded that plaintiff was capable of undertaking a range of light work. Light work is defined by the Commissioner as follows:

> Light Work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing

a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's cessation of benefits analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner contending that substantial evidence does not support the ALJ's finding that Plaintiff had the residual functional capacity to perform light work activity. (Dkt. 9 at 17-25.) In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff relies on the fact that x-rays taken in June of 2006 revealed moderate disc space narrowing at C5-6 with spurs at C4-5 and C5-6 and that testing showed stenosis of the left common iliac artery and vascular disease. (*Id.* at 24.) Plaintiff further relies on his own complaints of pain and use of a cane to ambulate. (*Id.* at 23.)

The ALJ found Plaintiff's complaints of disabling pain were not fully credible. (Tr. at 20.) Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective

medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

The ALJ found that although Plaintiff's own statement that he goes to the park, watches television and movies, visits with friends and plays checkers are "reflective of a sedentary lifestyle, this record fails to present a nexus between any reasonable etiology for such limitations." (Tr. at 21 (ALJ), 46 (Pl).) In other words, the ALJ did not find objective medical evidence to confirm the

severity of the alleged pain rising from the condition. 20 C.F.R. § 404.1529(b); *Jones,* 945 F.2d at 1369. As noted by the ALJ, Plaintiff's condition post-kidney surgery was under good control and did not affect his residual functional capacity. (Tr. at 20.) Although Plaintiff was found to have a torn meniscus of the left knee, the other structures of the knee were intact. (Tr. at 218.) The ALJ further found that Plaintiff's prior post-ganglion cyst surgery, costochondritis, back and hip pain, and his use of a cane caused limitations in his abilities to lift, carry, push and pull as well as limitations to simple, repetitive and routine work that were all reflected in the hypothetical posed to the vocational expert (VE). (Tr. at 20; 481-84.) This finding is consistent with Dr. Sidiq's findings, and was also based on the Plaintiff's own statements regarding his abilities as well as the medical evidence regarding his improved medical condition and physical capacities which, I suggest, indicate a lack of persistent impairments sufficient to be considered disabling. (Tr. at 46.) I therefore suggest that under the standard set forth above, there is on this record insufficient evidence upon which to overturn the ALJ's credibility determination.

Accordingly, after review of this record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/ *Charles E Binder*
                                                  CHARLES E. BINDER
Dated: October 29, 2008                     United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Kenneth F. Laritz, Judith E. Levy, and the Commissioner of Social Security and served on U.S. District Judge Battani in the traditional manner.

Date:  October 29, 2008        By     s/Patricia T. Morris
                                                        Law Clerk to Magistrate Judge Binder