UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GILBERT DAVIS,

        Plaintiff,

                          Case No. 08-10969

v.

                          HON. MARIANNE O. BATTANI

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

      Before the Court are Plaintiff's objections, (Doc. 13), to the Magistrate Judge's Report and Recommendation ("R&R"), (Doc. 12). The R&R recommends that the Court deny Plaintiff's Motion for Summary Judgment, (Doc. 9), and grant Defendant's Motion for Summary Judgment, (Doc. 10). The Magistrate Judge found that the Administrative Law Judge ("ALJ") utilized the proper legal standards in assessing Plaintiff's claim and that substantial evidence supported the ALJ's and Commissioner of Social Security's ("Commissioner") determination that Plaintiff had the residual functional capacity ("RFC") to perform light work activity. (Doc. 12 at 8-11). In particular, the Magistrate Judge determined that the ALJ's finding that Plaintiff's pain complaints were not credible and not confirmed by the objective medical evidence was supported by substantial evidence. For the reasons discussed below, the Court **ADOPTS** the Magistrate Judge's R&R.

## II.     STATEMENT OF FACTS

### A.     Procedural Facts

On August 18, 1993, Plaintiff was found to be disabled as of May 21, 1991.  (See Administrative Record ("AR") at 13).  A "Cessation or Continuance of Disability or Blindness Determination and Transmittal," indicated that Plaintiff was no longer disabled as of August 1, 2003.  (Id. at 24).  Plaintiff requested reconsideration of this decision on September 8, 2003.  (Id. at 29-34).  Plaintiff then met with a Disability Hearing Officer on February 10, 2004.  (Id. at 59-70).  On March 2, 2004, the Disability Hearing Officer determined that Plaintiff's disability had ceased as of August 1, 2003.  (Id. at 72-77).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and on July 20, 2006, Plaintiff appeared before an ALJ.  (Id. at 446A-86).  The ALJ issued a decision on August 4, 2006, also finding that Plaintiff's disability had ceased as of August 1, 2003.  (Id. at 13-22).  Plaintiff requested review of the ALJ's decision and, on January 9, 2008, the appeals council denied Plaintiff's request for review.  (Id. at 4-9).  On March 6, 2008, Plaintiff filed the present suit seeking judicial review.  (Doc. 1).

### B.     Plaintiff's Medical History

The most recent medical decision finding that Plaintiff was disabled was made on August 18, 1993.  (See AR at 14).  It was determined that Plaintiff had the following impairments at that time: Bell's palsy, hypertension, lumbar strain/back pain, a ganglion cyst of the right wrist, stomach ulcers, and costochondritis.  (See id.).  In September 2000, a cancerous tumor was discovered in Plaintiff's right kidney.  (Id. at 97-98).  The kidney was removed in February 2001.  (Id. at 100).  A follow-up assessment noted that

other than the tumor, the kidney looked normal, and that it was unlikely that there was any significant renal dysfunction of the left kidney.  (Id. at 124).

On September 11, 2002, Plaintiff was involved in a motor vehicle accident while riding a motorcycle.  (Id. at 127).  Plaintiff suffered multiple abrasions, but no fractures were found, and he was released from the hospital the following day.  (Id. at 127-28).  Later that year it was discovered that the accident had caused Plaintiff to suffer a severe foot sprain, resulting in bursitis, joint injuries, and tendinitis.  (Id. at 182).  Plaintiff suffered pain and swelling as a result of these injuries.  (Id.).

On June 25, 2003, Dr. Anjum Sadiq examined Plaintiff at the request of the Disability Determination Service.  (Id. at 194-98).  Dr Sadiq determined that Plaintiff had a normal range of motion in his lumbar spine, ankle, wrist, hands, and fingers.  (Id. at 197-98).  Dr. Sadiq also stated that a pinched nerve Plaintiff first experienced in 1980 was still causing him intermittent low back pain of a non-radiating nature.  (Id. at 194).  For two years, Plaintiff suffered arthritis in his hands, causing sharp, intermittent pain in both hands accompanied by stiffness, swelling, numbness, and tingling.  (Id.).  Dr. Sadiq also indicated that Plaintiff had been having problems with his foot since his motorcycle accident, although no fractures or dislocations were found following the accident. (Id. at 195).  However, a podiatrist subsequently diagnosed Plaintiff with weak posterior tibial tendon.  The podiatrist treated the injury conservatively with arch supports and injections.  Plaintiff complained to Dr. Sadiq that this injury was causing "constant pain of varying intensity ranging between dull to sharp."  (Id.).

A RFC assessment of Plaintiff was performed on August 25, 2003.  (Id. at 199).  It found that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or

3

walk for 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (Id. at 200). In addition, Plaintiff had no limits on his ability to push or pull apart from the aforementioned weight limits. (Id.). Plaintiff also could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Id. at 201).

On September 15, 2003, Plaintiff complained to his doctor of left leg pain. (Id. at 119). On November 25, 2003, a second RFC assessment of Plaintiff was performed, with the same results as the earlier test with the exception of a finding that Plaintiff could frequently (as opposed to occasionally) stoop, kneel, crouch, and crawl. (Id. at 207-14).

In January 2004, Plaintiff reported that he was experiencing left hip and knee pain due to the motorcycle accident. (Id. at 216-18). An MRI revealed a complex tear of the posterior horn of the medial meniscus and small left knee joint effusion. (Id. at 218). Otherwise, the ligaments and tendons of the knee were found to be unremarkable. The left hip was found to be normal except for a small fluid collection within the anterior acetabular roof and a minimal deformity of the lateral roof of the acetabulum. (Id.).

On April 14, 2004, Plaintiff complained of continuing pain in his left knee and hip. (Id. at 252). X-rays of the left hip revealed a posterolateral bony abnormality and a small bony fragment, which might have been a bone chip from the acetabulum. But, the acetabulum appeared to be intact. (Id.). In June 2004, it appears that Plaintiff was diagnosed with posttraumatic arthritis of the left hip and left knee. (Id. at 372).

On January 15, 2006, Plaintiff reported to the emergency room coughing and complaining of dizziness and shortness of breath. (Id. at 246). He was diagnosed with bronchitis, given medication, and discharged in stable condition. (Id. at 247). On June

4

26, 2006, Plaintiff reported joint pain in his hands, shoulders, and left hip. (<u>Id.</u> at 416). A doctor discovered moderate disc space narrowing at C5-C5, and prominent spurring at C4-C5 and C5-C6. (<u>Id.</u> at 415). The doctor indicated that these were degenerative changes. (<u>Id.</u>).

Plaintiff testified before the ALJ on July 20, 2006. (<u>Id.</u> at 446A). Plaintiff stated that he had suffered back problems since he was injured while working at Ford Motor Company in 1979. (<u>Id.</u> at 451, 458). He had also experienced problems with his hands since around that time. (<u>Id.</u> at 458-59). Plaintiff said that he was in a motorcycle accident in 2002 and that he had his doctor's permission to ride the motorcycle. (<u>Id.</u> at 454-56). He stated that he was able to ride a motorcycle because it did not require any work. (<u>Id.</u>). As a result of the accident, he had problems with his hip, knee, and foot. (<u>Id.</u> at 459).

Regarding his lower back, Plaintiff stated that he often had pain if he was standing for more than 10 minutes, sitting for more than 30 minutes, or bending over. (<u>Id.</u> at 460-61). He said that he did sit through movies, although it caused him pain. (<u>Id.</u> at 473). Plaintiff also indicated that he could walk for about half a block before he would start having problems. (<u>Id.</u> at 462). Regarding his hip, he said that it was painful if he was walking or bending over. (<u>Id.</u> at 462-63). Plaintiff said that his hip pain had worsened since the time of the accident. (<u>Id.</u> at 462). Regarding his hands, he stated that they had arthritis-like symptoms and would "lock up" if he was using his hands a lot. (<u>Id.</u> at 463). As an example, he indicated that writing by hand for over 30 minutes would cause his hands to lock up. (<u>Id.</u>). Regarding his knee, Plaintiff testified that walking or laying the wrong way would cause pain. (<u>Id.</u> at 465). Regarding his foot, he stated that

he had swelling and pain everyday. (Id. at 467). Plaintiff said he lived in a two-story house and that although going up and down the stairs was good for his legs, it hurt his hip. (Id. at 471).

The vocational expert ("VE") then testified before the ALJ. (Id. at 480-85). The ALJ asked the VE whether there would be any jobs for

> an individual of [Plaintiff's] age, which is considered a younger individual 45-49, of his education high school graduate or more. And if such an individual is limited to light work, that's lifting no more than 20 pounds, frequently lifting or carrying ten pounds, and generally six hours standing or walking but in this case [the] individual would need a sit stand option. And could only occasionally climb, balance, stoop, kneel, crouch, or crawl, no ladders. And is limited to simple routine, repetitive tasks and would have to avoid concentrated exposure to vibrating tools.

(Id. at 481-82). The VE indicated that there would be jobs for such an individual, including assembly-type, inspecting, checking, sorting, packaging, counter and rental clerk, cashiering, and greeter jobs. (Id. at 482). The ALJ then asked the VE if it would affect these jobs if the individual needed to use a cane to travel more than 10 or 15 feet, and the VE said that it would affect the jobs, but that it would not eliminate them because the work is done mostly at a workstation. (Id. at 482-83). The ALJ also asked whether it would preclude employment if the individual had to have his legs elevated "for more than a couple hours during the course of the day." (Id. at 485). The VE said that such elevation could be performed with the sit stand option, but that, depending on the setup of the workstation and the degree of elevation required, it could preclude some jobs. (Id.).

## III.    STANDARD OF REVIEW

6

The Court must affirm the Commissioner's conclusions so long as the Commissioner applied the correct legal standards and made findings of fact that are supported by substantial evidence in the record.  Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is evidence that a reasonable mind might accept as adequate evidence in support a conclusion.  Id.  The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

**IV.   ANALYSIS**

Under 42 U.S.C. § 423(a), an individual is entitled to disability benefits if they, among other things, are disabled.  A person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Even after it has been determined that an individual is entitled to benefits, the individual's continued entitlement to those benefits is periodically reviewed. 20 C.F.R. § 416.994(a).  During such review, there is no presumption concerning whether the individual is disabled.  Id. § 404.1594(b)(6).  Upon review, an individual will be found to be no longer disabled if (1) there is medical improvement in the individual's impairments (2) that relate to his or her ability to work and (3) the individual is currently able to engage in substantial gainful activity.  Id. § 416.994(b).  Medical improvement is any decrease in the medical severity of the individual's impairment that was present at

the time of the most recent favorable medical decision that the individual was disabled or continued to be disabled. Id. § 416.994(b)(1)(i). Such a medical improvement is considered to relate to the individual's ability to work if there is an increase in the individual's functional capacity to do basic work activities. Id. § 404.1594(b)(3) and (4).

Plaintiff argues that the Magistrate Judge erred because his medical condition deteriorated through 2006, when the ALJ rendered his decision. In addition, Plaintiff claims that the R&R's assertion that there was no objective evidence confirming his pain is false. Plaintiff also contends that the Magistrate Judge did not address the impact that his need for a cane would have on his ability to work.

The most recent favorable medical decision finding that Plaintiff was disabled was the August 18, 1993, decision, which determined that Plaintiff had Bell's palsy, hypertension, lumbar strain/back pain, a ganglion cyst of the right wrist, stomach ulcers, and costochondritis. See id. § 416.994(b)(1)(i). The two 2003 RFC assessments constituted substantial evidence that Plaintiff's medical impairments had improved and that Plaintiff could engage in meaningful work activity. In particular, the August 25, 2003 RFC assessment, which was the RFC assessment finding Plaintiff's ability to function to be the most limited, found that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (Id. at 200). Plaintiff had no other limits on his ability to push or pull, and Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Id. at 201). Accordingly, at that time, there was medical improvement that related to Plaintiff's ability to work. 20 C.F.R. § 416.994(b).

The remaining issue is whether Plaintiff's condition deteriorated since the RFC assessments such that he was not able to engage in substantial gainful activity. Plaintiff claims that there is substantial objective evidence indicating that his condition deteriorated following the RFC assessments in 2003. (See doc. 13 at 5-8). Most of the evidence Plaintiff points to, however, only consists of his complaints of pain to his doctors. The ALJ found that Plaintiff's pain complaints were not credible, and the Magistrate Judge determined that this finding was supported by substantial evidence because there was not objective medical evidence supporting Plaintiff's claims of pain.

In assessing a claimant's complaints of pain, an ALJ may consider the claimant's credibility. Walters, 127 F.3d at 531. The ALJ's credibility findings, however, must be supported by substantial evidence. Id.; see Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 475 (6th Cir. 2003) ("There is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record.").

This Court agrees with the Magistrate Judge's determination that the ALJ's finding that Plaintiff's complaints of pain were not credible was supported by substantial evidence.[1] In particular, there is little objective evidence showing that Plaintiff's previous injuries deteriorated or Plaintiff developed new injuries since the 2003 RFC assessments, which indicated that Plaintiff was not disabled.

---

[1] Although Plaintiff contends that the Magistrate Judge did not mention or address Plaintiff's September 2003 through October 2007 medical records, a review of the R&R shows that the Magistrate Judge did address these records. (See doc. 12 at 7, 9, 11).

9

Plaintiff complained of knee and hip pain in early 2004 when the torn meniscus in his knee and the fluid, possible bone chip, and minimal deformity in the hip were discovered.  These injuries were a result of the 2002 motorcycle accident, and Plaintiff had complained of left leg pain as early as September 15, 2003.  (See AR at 119, 218). Therefore, the August 2003 and November 2003 RFC assessments, which were conducted approximately a year after the accident and demonstrated that Plaintiff was not disabled, indicate that the injuries from the motorcycle accident, including these knee and hip injuries, did not render Plaintiff disabled.  Furthermore, there is no evidence, apart from Plaintiff's complaints of pain, that his knee or hip subsequently degenerated.  (See, e.g., id. at 398 (September 15, 2004, doctor visit where Plaintiff was using a cane and the doctor reported that Plaintiff's hip and leg symptoms were being controlled with medication); id. at 406 (indicating that in late 2004, physical therapy had helped Plaintiff considerably and that he had improved mobility and pain control on his left side)).

Plaintiff currently complains of lower back pain and, in 2006, he was found to have moderate disc space narrowing and prominent spurring in his back.  (Id. at 415). On the date when these were discovered, Plaintiff complained of joint pain in his hands, shoulders, and left hip, but he did not complain of back pain.  This indicates that this disc space narrowing was not causing him any significant distress.  Accordingly, there is substantial evidence supporting the ALJ's finding that the objective medical evidence does not demonstrate a basis for Plaintiff's pain complaints from the time of his 2003 RFC assessments through his 2006 hearing before the ALJ.  Therefore, the Court

upholds the ALJ's determination that Plaintiff's pain complaints were not credible.  See Walters, 127 F.3d at 531.

In addition, Plaintiff's use of a cane fails to show that there is not substantial evidence that Plaintiff is no longer disabled.  In particular, the VE specifically addressed whether the use of a cane would impact the employment prospects of an individual in Plaintiff's condition.  (Id. at 483).  The VE indicated that the use of a cane might affect the performance of some of the jobs because an individual might need to walk to retrieve things.  But, the VE stated that the use of a cane would not eliminate the jobs because they mostly involve only working at a work station.

Therefore, for the aforementioned reasons, the Court agrees with the Magistrate Judge's conclusion that substantial evidence supports the ALJ's determination that Plaintiff was no longer disabled as of August 1, 2003.

**V.   CONCLUSION**

Accordingly, the Court **ADOPTS** the R&R.  Thus, Plaintiff's Motion for Summary Judgment, (Doc. 9), is **DENIED**, Defendant's Motion for Summary Judgment, (Doc. 10), is **GRANTED**, and the findings of the Commissioner are **AFFIRMED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: March 11, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK